UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER FLOURNOY,

       Petitioner,                                    Hon. Paul L. Maloney

v.                                                             Case No. 1:07-CV-676

DOUG VASBINDER,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Flournoy's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Flournoy's petition be **denied**.


## BACKGROUND

As a result of events which occurred on January 28, 2002, Petitioner was charged with first degree murder, possession of a firearm during the commission of a felony, and possession of a short-barreled shotgun. (Preliminary Examination Transcript, February 21, 2002, 4-5). Following a preliminary examination, Petitioner was bound over for trial on all three charges. (Tr. 101-02). Prior to trial, Petitioner entered into a plea agreement, pursuant to which he agreed to plead guilty to second degree murder in return for the dismissal of the three original charges. (Plea

1

Transcript, July 24, 2002, 2-10). After a lengthy examination of Petitioner, the trial judge stated:

> I'm satisfied this plea has been made knowingly, understandingly, freely and voluntarily and accurately without any threats or coercion or promises of leniency and based on the statements made to the court by this defendant, the court is satisfied beyond any doubt that the defendant is guilty and therefore his plea is accepted.

(Tr. 18).

Petitioner was sentenced to serve 15-50 years in prison. (Sentence Transcript, October 4, 2002, 12-13). Petitioner appealed his conviction to the Michigan Court of Appeals, asserting the following claims:

> I. Defendant's plea was involuntary because it was not knowing and intelligent. He was not aware that he may have had a complete defense to the charges, i.e. self-defense.
>
> II. Defendant's plea was not supported by a sufficient factual basis because the shooting was a justifiable homicide and Defendant therefore had a complete defense.
>
> III. Defendant received ineffective assistance of counsel because counsel did not carefully discuss the defense of self-defense with him.

The Michigan Court of Appeals dismissed Petitioner's appeal "for lack of merit in the grounds presented." *People v. Flournoy,* No. 273622, Order (Mich. Ct. App., Nov. 6, 2006). Asserting the same three claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Flournoy*, No. 132723, Order (Mich., Mar. 26, 2007). On July 18, 2007, Petitioner initiated the present action, asserting the same three issues identified above.

## STANDARD OF REVIEW

Flournoy's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state

4

court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

5

# ANALYSIS[1]

**I.      Guilty Plea**

As previously noted, Petitioner was initially charged with first degree murder, possession of a firearm during the commission of a felony, and possession of a short-barreled shotgun. Petitioner subsequently entered into a plea agreement, pursuant to which he agreed to plead guilty to second degree murder in return for the dismissal of the three original charges. Petitioner now claims that his conviction must be set aside because his plea "was involuntary, it was not knowing and intelligent." Petitioner's claim is based on his assertion that when he plead guilty he "was not aware that he had a defense of self-defense." Petitioner asserts that had he been aware that such a defense was available he would not have pleaded guilty.

A guilty plea is valid if it is made "knowingly, voluntarily, and intelligently." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also*, *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (to be valid, a guilty plea must be made "voluntarily and intelligently," with "knowledge of the relevant circumstances and likely consequences"). Determining whether a plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *Dutton*, 17 F.3d at 153. To prevail on his claim, Petitioner must demonstrate "such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment." *Ray v. Cockrell*, 2003 WL 22070892 at *3 (N.D. Tex., Feb. 27, 2003) (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)); *Thomas v. Cain*, 2007 WL 2874778

---

[1] The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner's request for leave to appeal his conviction. Because the Michigan courts altogether declined to address the merits of Petitioner's claims, this Court, pursuant to the aforementioned authority, must evaluate such claims pursuant to a *de novo* standard of review.

at *13 (W.D. La., Sept. 7, 2007) (same).

Respondent bears the burden of establishing that Petitioner's guilty plea was voluntary, intelligent, and knowing. *See Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004) (*reversed in part on other grounds* 545 U.S. 175 (2005)). This burden is generally satisfied "by producing a transcript of the state court proceeding," because "[a] state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing." *Stumpf*, 367 F.3d at 600 (citing *Garcia v. Johnson*, 991 F.2d 324, 326-27 (6th Cir. 1993)).

Before accepting Petitioner's plea, the trial judge engaged in a lengthy discussion with Petitioner regarding the nature of the crime to which he was agreeing to plead guilty, including the potential punishment if convicted thereof, as well as the precise nature of the rights he was surrendering by pleading guilty. (Plea Transcript, July 24, 2002, 2-6). Petitioner acknowledged on the record that he understood that by pleading guilty he was surrendering the following rights: (1) the right to a trial, either by the court or a jury, (2) the right to be presumed innocent until proven guilty beyond a reasonable doubt, (3) the right to have the witnesses against him appear at trial, (4) the right to question the witnesses against him, (5) the right to compel the attendance at trial of any witness on his own behalf, (6) the right to remain silent at trial, (7) the right to not have any such silence used against him at trial, and (8) the right to testify at trial. (Tr. 5).

Petitioner acknowledged that by pleading guilty he was "admitting to the Court that the charges against [him] are true in every respect and either [he has] no defense to this charge or if [he does] have a defense, [he was] waiving or giving it up." (Tr. 4). Petitioner also acknowledged that he understood that by pleading guilty to second degree murder, he "may be imprisoned for any

7

term of years up to and including life imprisonment." (Tr. 4). The Court further notes that Petitioner's acknowledgment of guilt - made on the record and under oath - was clear and without equivocation. (Tr. 6-18).

The record contains no evidence that Petitioner was "confused" regarding the crime to which he agreed to plead guilty. The precise nature of the plea agreement was clearly explained to Petitioner, who acknowledged his understanding thereof. The potential punishment for such was also clearly explained to Petitioner. Considering that Petitioner faced a mandatory sentence of life in prison if convicted of first degree murder, his decision to accept the plea bargain was not unreasonable.

Petitioner's argument that he was unaware "that he had a defense of self-defense" is also unpersuasive. First, before accepting Petitioner's plea the trial judge asked Petitioner whether his attorney had discussed with him "the defenses the law of this state recognizes regarding the charge," to which Petitioner stated, "yes." (Tr. 8). The Court recognizes that the trial judge did not ask Petitioner whether his attorney specifically discussed self-defense; however, Petitioner has not submitted any evidence that his attorney, when discussing the defenses available to Petitioner, failed to address the topic of self-defense. Moreover, as discussed below, Petitioner's assertion that he "had a defense of self-defense" is based upon a misreading of Michigan law.

In sum, the record contains no evidence supporting Petitioner's claim that his plea was not made knowingly, intelligently, and voluntarily. Accordingly, the Court concludes that this particular claim is without merit and cannot form the basis for habeas relief.

**II.**     **Factual Basis for Plea**

Petitioner next asserts that he is entitled to relief because his plea was not supported by a sufficient factual basis. This claim fails for two reasons.

First, a review of the plea transcript reveals that there existed a sufficient factual basis for Petitioner's plea. The elements of second degree murder are: (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, and (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably would cause death or great bodily harm. *See People v. Lulgjuraj*, 2001 WL 1480814 at *1 (Mich. Ct. App., Nov. 20, 2001) (citing *People v. Bailey*, 451 Mich. 657 (1996)).

Under Michigan law, the issue of a factual basis for a plea "does not relate to guilt or innocence, but to whether there is evidence on which the trier of fact might have convicted the defendant at a trial." *Holtgrieve v. Curtis*, 174 F.Supp.2d 572, 583 (E.D. Mich. 2001) (citation omitted); *see also*, *People v. Brownfield*, 548 N.W.2d 248, 250 (Mich. Ct. App. 1996) (when reviewing the sufficiency of the factual basis for a guilty plea, the question is "whether the factfinder could properly convict on the facts elicited from the defendant at the plea proceeding"). A factual basis is sufficient under Michigan law "if an inculpatory inference can be drawn from what the defendant has admitted, even if exculpatory inferences could also be drawn." *Holtgrieve*, 174 F.Supp.2d at 583; *see also, In re Guilty Plea Cases*, 235 N.W.2d 132, 144-46 (Mich. 1975). Furthermore, under Michigan law, "even where the trial court fails to elicit a factual basis of an element of the offense at the time of taking the guilty plea, the defendant is not entitled to have his conviction reversed on that basis where the factual basis of the defendant's guilty plea is supported

9

by the record of his preliminary examination." *Holtgrieve*, 174 F.Supp.2d at 584 (citing *People v. Benedict*, 194 N.W.2d 51, 52 (Mich. Ct. App. 1971).

Petitioner acknowledged that he fired a shotgun at the victim from a distance of approximately three feet. (Plea Transcript, July 24, 2002, 11-15). Petitioner has, furthermore, identified no evidence that might justify, excuse, or mitigate his behavior. Petitioner testified that he had placed his shotgun in a bedroom and that he retrieved it just as the victim entered the residence. (Tr. 12-17). Petitioner further testified that the victim was neither armed with a weapon nor engaged in any threatening behavior toward Petitioner (or anyone else). (Tr. 12-17). Petitioner's testimony was sufficient to support a conviction for second degree murder. Thus, there existed a sufficient factual basis for Petitioner's guilty plea. This conclusion is also supported by the testimony presented at the preliminary examination that Petitioner had previously stated that he was going to kill the victim and initiated the encounter that led to his victim's death. (Dkt. #11).

Furthermore, even were the Court to question whether there existed a sufficient factual basis for Petitioner's plea, the result would be the same. While Michigan Court Rules require that the trial court "establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading," M.C.R. 6.302(D)(1), an alleged failure by a state trial court "to establish a sufficient factual basis to support [a] guilty plea does not provide a basis for federal habeas relief, because there is no federal constitutional requirement that a factual basis supporting a plea be established, or that the defendant admit factual guilt, so long as the plea is intelligently and voluntarily made." *Purifoy v. Stovall*, 2009 WL 1044612 at *3 (E.D. Mich., April 20, 2009) (citing *Holtgrieve*, 174 F.Supp.2d at 583); *see also*, *Washington v. Workman*, 2009 WL 4955961 at *5 (W.D. Okla., Dec. 14, 2009) (same). Accordingly, this claim raises no issue on

10

which habeas relief may be granted.

**III.        Ineffective Assistance**

Petitioner asserts that his attorney "never told me that I had a defense of self-defense" in this matter. Petitioner asserts that counsel's failure constituted ineffective assistance.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Thus, to satisfy the prejudice requirement, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Railey*, 540 F.3d at 415 (6th Cir.

11

2008) (quoting *Lockhart*, 474 U.S. at 58-59).

It is not clear from Petitioner's pleadings whether he is asserting that his attorney *completely failed* to broach the topic of self-defense or instead failed to *competently* assess the possibility of a self-defense theory. Petitioner's claim fails under either interpretation.

As discussed above, before accepting Petitioner's plea the trial judge asked Petitioner whether his attorney had discussed with him "the defenses the law of this state recognizes regarding the charge," to which Petitioner stated, "yes." Petitioner has submitted no evidence that his counsel failed to discuss the subject of self-defense. Thus, Petitioner cannot establish that his attorney completely failed to discuss the topic of self-defense.

To the extent that Petitioner's claim is interpreted as asserting that his attorney failed to competently assess the possibility of advancing a claim of self-defense, the result is the same. In his state court pleadings, Petitioner asserted that under *People v. Riddle*, 649 N.W.2d 30 (Mich. 2002), he was absolutely justified in shooting the victim. Petitioner asserts that despite the fact that *Riddle* was decided "two months before [his] plea," his attorney inexcusably failed to consider the impact of the *Riddle* decision on his ability to advance a claim of self-defense.

First, contrary to Petitioner's assertion, *Riddle* was not decided until *after* Petitioner pled guilty in this matter. Petitioner pled guilty on July 24, 2002, and the *Riddle* decision issued on July 31, 2002. Thus, counsel was hardly ineffective for failing to discuss with Petitioner a case which had yet to be decided. Moreover, even if *Riddle* had been decided prior to Petitioner's plea, the Court fails to discern how such advances Petitioner's claim that he acted in self-defense.

In *Riddle*, the court addressed the question whether an individual has a duty to retreat before exercising deadly force in self-defense while in his yard (as opposed to his home). *Riddle*,

649 N.W.2d at 34. At the outset, the court identified the "general rule" that "the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force." *Id.* The court then identified three additional "concepts that provide further guidance in applying this general rule in certain fact-specific situations." *Id.* at 35. First, "a person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." Second, "[a] participant in voluntary mutual combat will not be justified in taking the life of another until he is deemed to have retreated as far as safely possible." Third, "regardless of the circumstances, one who is attacked in his dwelling is *never* required to retreat where it is otherwise necessary to exercise deadly force in self-defense." *Id.*

Petitioner, relying on *Riddle*, asserts that he "had no duty to retreat because he was in his own house." Thus, Petitioner asserts that he acted in self-defense. Petitioner's reliance on *Riddle* is misplaced. First, the general self-defense rule affords Petitioner no relief because while Petitioner may have honestly believed that he was in imminent danger of death or great bodily harm, there is no evidence that such a belief was reasonable. In fact, testimony presented at the preliminary examination indicated that Petitioner's killing of the victim was the result of premeditation and forethought.

The three additional self-defense "concepts" likewise fail to advance Petitioner's cause. There is no evidence that the victim attacked Petitioner. To the extent that Petitioner asserts that he believed that the victim was "about to use a deadly weapon," there is no evidence that such a belief was reasonable. There is no evidence that Petitioner and the victim were engaged in

13

"voluntary mutual combat." Even if such were the case, there is no evidence that Petitioner "retreated as far as safely possible" before killing the victim. Finally, the third circumstance, the one on which Petitioner appears to rely, does not afford relief. Petitioner's interpretation of this concept (i.e., that he "had no duty to retreat because he was in his own house") is not entirely correct. As the *Riddle* court stated, "one who is attacked in his dwelling is never required to retreat *where it is otherwise necessary to exercise deadly force in self-defense*." *Riddle*, 649 N.W.2d at 35 (emphasis added). There is no evidence that it was *necessary* for Petitioner to use *deadly force* in self-defense.

In sum, for the reasons articulated above, Petitioner cannot establish that his attorney's performance was deficient. However, even if the Court assumes that counsel's performance was deficient, the result is the same as Petitioner cannot establish that there existed a "reasonable probability" that, but for his attorney's alleged shortcoming, he would have "insisted on going to trial." The evidence presented at the preliminary examination indicated that Petitioner's killing of the victim was the result of premeditation and forethought. The evidence presented at the preliminary examination did not support the notion that Petitioner acted in self-defense. Considering this evidence and the fact that Petitioner faced a mandatory sentence of life in prison if convicted of first degree murder, Petitioner's decision to accept the plea bargain was reasonable. Petitioner has presented neither evidence nor argument that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. Accordingly, this claim presents no claim on which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Flournoy's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 23, 2010
 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge