UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHRISTOPHER FLOURNOY #423272,

    Petitioner,

v.

DOUGLAS VASBINDER,

    Respondent.

Case No. 1:07-CV-676

HONORABLE PAUL L. MALONEY

---

**OPINION and ORDER**

**Overruling the Petitioner's Objections and Adopting the R&R;**
**Dismissing the 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus;**

**Entering Judgment in Favor of the Respondent;**
**Declining to Issue a Certificate of Appealability;**
**Terminating and Closing the Case**

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on Tuesday, March 23, 2010. Plaintiff filed timely objections on Friday, April 2, 2010,[1] but the court finds that much of plaintiff's objection is not sufficiently

---

[1]

    Both the Federal Rules of Civil Procedure and the Federal Magistrates Act were amended effective December 1, 2009 to simplify the calculation of time periods. *See* Pub. L. No. 111-16 § 6(1), 123 Stat. 1608. A party now has fourteen days to file objections after being served with an R&R, instead of ten. *See* 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72 and W.D. MICH. LCIVR 72.3(b)). The fourteen days did not start until the day after the parties were served, *see* FED. R. CIV.

specific and articulated to trigger *de novo* review of the portions of the R&R which he purports to challenge.[2] Because petitioner's objections patently lack merit, the court will not require the warden to file a response. Petitioner Flournoy's objections read as follows:

> Petitioner specifically objects to the following aspects of the Magistrate's report and recommendation:
>
> 1. Guilty Plea MCR 6.302(A)(B)(C)(E) clearly put conditions in excepting [sic] a plea. The defendant has to have an understanding of the rights he/she are waiving. 395 Mich 96 (1975) . . . . And the only challenges which may be in a collateral attack to a prior guilty plea are the lack of effective assistance of counsel. *Hill v. Lockhart* 894 F2d 1009 (CA8, 1990) . . . .
>
> 2. Clearly the ignorance of trial counsel of [the] relevant defense of self-defense was objectively unreasonable under prevailing professional norms. *Magana v. Hofbauer* 263 F3d 542 (CA6, 2001).
>
> 3. In the State of Michigan Court system, in [the] guilty plea context, the key issue is whether the plea was voluntary and understanding. *People v. Prentice Watkins* 247 Mich App. 14 (2001), *aff'd on other grds* 468 Mich 233 (2003).

---

P. 6(a)(1)(A) (when calculating a time period, the period does not begin until the day after the event that triggers the right or obligation), and the court counts all calendar days, including weekends and federal holidays, *see* FED. R. CIV. P. 6(a)(1)(B).

[2]

"'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

*See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.));

4. Clearly the trial counsel had a professional obligation to stay updated with cases pending in the appellate courts that may aid his client with the best defense. The trial counselor had access to SADD [?] so *People v. Riddle* 649 N.W[].2d 30 (Mich 2002) was not something he could not look into. He also could ask the trial court to postpone the trial until the outcome of *People v. Riddle Supra*. If his client wanted to pursue a self-defense trial defense [sic]. The Petitioner was deprived of this chance of all options being put before him before he decided, so he could not constitutionally understand what civil rights he was waiving.

5. Clearly the federal courts have reco[g]nized the liberty interest of defendants once a state administratively or legislatively put[s] restraints on their decision making. *Adams v. Wainwright* D.C. Fla. 512 F. Supp[.] 948, 953; *Meachum v Fano* 427 US 215 . . . (1976). (Please refer to argument 6 on following page.)

\* \* \*

6. [T]he Magistrate clearly admits that . . . the [state] trial court did not ask Petitioner whether his attorney specifically discussed self-defense with Petitioner. (Page 8) of Magistrate's Report. Magistrate then states Petitioner has not submitted any evidence that his attorney, when discussing the defenses available to Petitioner, failed to address the topic of self-defense. However Petitioner submitted an <u>AFFIDAVIT</u> to the Court of APPEALS stateing [sic] that his attorney did not (Affidavit Exhibit 2) please find enclosed.

Magistrate also states (page 8)[:] Petitioner[']s assertion that he "had a self-defense claim" is based upon a misreading of Michigan law. However [the Magistrate] fails to address what the misreading of Michigan law is. Clear[l]y *People v Riddle* (467 Mich 116) that was Argued <u>April 9, 2002</u> three months previous to Petitioner pleading guilty states that Petitioner had no duty to retreat while in his house or (Castle.)[.] Clearly it can be seen from Petitioner[']s transcripts that this incident happen[ed] within the confines of his home. There is clearly no misreading of State law on Petitioner's behalf.

7. Magistrate also states on II [?] Factual Basis for Plea on (page 9). That Petitioner asserted that he is entitled to relief because his plea was not supported by [a] sufficient factual basis. Magistrate asserts that there was [a] factual basis for plea. However [the Magistrate] does not acknowledge the fact that the Petitioner stated that he was fearful that the deceaised [sic] would attack him because of an altercation where the deceaised [sic] threatened him earlier. *Id.* [at] 12-13[.]

This statement in itself takes away the element of second degree murder (absent

> circumstances of justification, excuse, or mitigation)[)]. The Petitioner stated he was fearful. *Id.* [at] 12-13[.] He also stated that the deceaised Mr. Doss approached him in his own home and began to walk t[o]w[a]rds him. *Id.* [at] 14. Only then did petitioner fire his weapon at Mr. Doss. *Id.* [at] 14. Petitioner also told Mr Doss to leave before shooting Mr. Doss. *Id.* [at] 16.
>
> Clearly these statements at the plea hearing were not FACTUAL BASIS FOR A SECOND DEGREE MURDER PLEA. Simply because the Petitioner was defending his actions with an excuse and justifying his actions. Clearly the elements of second degree murder are (1) death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, and (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with knowledge that the act probably would cause of great bodily harm. *See* [*P*]*eople v. Lulgjuraj*, 2001 WL 1480814 at *1 (Mich. Ct. App., Nov. 20, 2001) (citing *People v. Bailey*, 451 Mich. 657 (1996)). Clearly element (3) is missing from Petitioner[']s plea. Petitioner clearly justified and had an excuse for the shooting. Therefore Petitioner[']s plea should not have been accepted due to lack of [a] factual basis. Petitioner had justification at plea for shooting.

P's Objections at 1-2 and following pages numbered 1-3. Petitioner Flournoy also submits a copy of the affidavit which he filed with the state circuit court, stating as follows:

> 2. My trial counsel was Fred Hunter. I always told Mr. Hunter that I thought I had a claim of self-defense, but he never really explained to me what a valid self-defense claim was. We did not discuss in any sort of detail whether or not I would be entitled to claim self-defense.
>
> 3. Mr. Hunter told me that he had tried to get the prosecution to lower the charges to manslaughter, but that the prosecutor insisted that he had a good case for premeditated first degree murder and would not agree to anything less than second degree murder. But, Mr. Hunter did not even discuss with me that I might very well be entitled to claim self defense, in which case, the homicide was justifiable.
>
> 4. The day before the shooting, the victim, Patrick Doss, had come to my house. While we and several others were in the driveway, we had some words concerning an assault I believed he had committed against my girlfriend. I asked him why he even came to my house. Mr. Doss said, "FuckYou," and came around the car at me. Mr. Doss waved a chrome object at me, that I believed was a handgun. I had a bat, but I never even walked toward him. Mr. Doss said, "I'll be back."

4

5.  The next day, Mr. Doss came to my house with his girlfriend [name omitted] to pick up his girlfriend's baby. His girlfriend walked into the house while I was in the living room along with my girlfriend, [name omitted]. I asked where Patrick [Doss] was, and his girlfriend said, "He's coming right in." I said, "Don't let him in," and went into the bedroom to get the shotgun. What I was going to do was lock the door so that Patrick could not get in.

6.  By the time I got back from the bedroom, Patrick [Doss] had already come into the home. He pushed his girlfriend [name omitted] out of the way and looked at him. I said to him, "Why don't you just leave, man?"

7.  Patrick then said, "fuck you," and started walking towards me. He had his hand behind his back.

8.  I then shot the gun, because I was afraid that Patrick was coming to kill or hurt me.

9.  All this happened in my own home, the house I was living in with my girlfriend. It was my own residence, and I think I should have been able to claim self-defense, but Mr. Hunter never really explained it to me. He said there was no way I could claim self-defense.

10. I would not have pleaded guilty if I had known that I might have a valid claim of self-defense.

Pet's Objections, Exhibit 2 (Affidavit of Petitioner Christopher Flournoy notarized October 11, 2006) ("Flournoy Aff").

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objection.** For the reasons explained by the R&R, Flournoy's section 2254 habeas petition will be denied. First, the court overrules Flournoy's objection that his guilty plea was not knowing, intelligent and voluntary because, as the Magistrate acknowledged, R&R at 8, the state trial court "did not ask Petitioner specifically whether his attorney had discussed the possible defense of self-defense with Petitioner." Against the Magistrate's statement that Petitioner did not submit any

5

evidence that his attorney failed to address the topic of self-defense when discussing potential defenses, Flournoy submits an affidavit which he filed on his unsuccessful direct appeal to the Michigan Court of Appeals. The affidavit states, in pertinent part,

> 2. My trial counsel was Fred Hunter. I always told Mr. Hunter that I thought I had a claim of self-defense, but he never really explained to me what a valid self-defense claim was. We did not discuss in any sort of detail whether or not I would be entitled to claim self-defense.
>
> 3. * * * Mr. Hunter did not even discuss with me that I might very well be entitled to claim self defense, in which case, the homicide was justifiable.
>
> * * *
>
> 10. I would not have pleaded guilty if I had known that I might have a valid claim of self-defense.

Flournoy Aff. Flournoy's submission of this affidavit at this late juncture is unavailing, for two reasons.

First, Flournoy could and should have filed the affidavit while the Magistrate was considering his habeas petition. That would have afforded the respondent an opportunity to address it in its briefs before the Magistrate, and given the Magistrate an opportunity to address it in the R&R. "The Magistrates Act was not intended 'to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" *Jones-Bey v. Caruso*, 2009 WL 3644801, *3 (W.D. Mich. Oct. 30, 2009) (Maloney, C.J.) (quoting *Greenhow v. US*, 863 F.2d 633, 638-39 (9th Cir. 1988), *rev'd on other grounds sub nom. US v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (*en banc*)). Moreover, "'[i]f the Court were to consider these untimely arguments, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Recommended Ruling has issued to advance additional arguments.'" *Kita v. SSA*, 2009 WL 1464252, *2 (W.D. Mich. May 18, 2009) (quoting *Burden v. Astrue*, 588 F. Supp.2d 269, 279 (D.

Conn. 2008) ("Regarding Burden's new argument that her headaches are debilitating because they would lead to an unacceptable number of absences for any employment for which she is qualified, this argument is waived because Burden never raised it prior to her Objection to the [R&R]."); *see, e.g., McGee v. US*, 2010 WL 520708, *3 (W.D. Mich. Feb. 8, 2010) ("[H]e asserts . . . that 28 U.S.C. § 1915(b)(1) and (2) are unconstitutional because they unduly burden indigent people's access to the federal courts, and because they deny equal protection to indigent prisoners, who should be treated as a suspect class . . . . Because McGee did not raise these arguments before the Magistrate Judge, he may not raise them now.") (record and brief citations omitted). Moreover, "a willingness to consider new arguments at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them." *US v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000).[3]

This court could, therefore, review the R&R without considering the affidavit. *Cf. Braxton v. Fortner*, 2009 WL 690659, *2 (M.D. Tenn. Mar. 11, 2009) (Robert Echols, J.) ("The Court could therefore accept the R&R, without even considering the argument which is raised for the first time in the Objections filed by the Petitioner."); *Wedyke v. Potter*, 2008 WL 2705501, *2 (E.D. Mich. July

---

[3] *See also King v. Zamiara*, 2009 WL 1067317, *1 (W.D. Mich. Apr. 21, 2009) (Bell, J.) ("Because Defendants failed to raise this argument before the Magistrate Judge, they will be deemed to have waived it."). *Accord Mitchell v. Washtenaw Cty.*, 2009 WL 909581, *4 (E.D. Mich. Mar. 31, 2009) ("Because the Defendants did not raise the collateral estoppel argument in their motion before te magistrate judge, they have waived it."); *Sheets v. Astrue*, 2008 WL 3895515, *1 (S.D. Ohio Aug. 22, 2008) ("Sheets also argues that the [ALJ] failed to say what listings were applicable or why Sheets did not meet any listing either individually or in combination. [But] this argument was not raised . . . before the Magistrate Judge and therefore is waived."); *Hennessy v. CIR*, 2007 WL 4357755, *2 (E.D. Mich. Dec. 5, 2007) ("Petitioners object to the [R&R,] stating that the IRS failed to comply with the notice requirements of 26 C.F.R. § 1.6001-1(d) . . . . These objections have been waived as these issues were not raised before the Magistrate Judge.").

10, 2008) (Lawson, J.) ("The new deposition pages belatedly submitted by the plaintiff never were supplied to the magistrate judge, and therefore they were not considered by her. They are not properly before the Court now.").

But even if the court considered Flournoy's affidavit, it does not undermine the Magistrate Judge's reasoning. Whatever Flournoy alleges in his direct-appeal affidavit, the undisputed fact remains that at the plea colloquy, Flournoy answered "yes" when the trial judge asked whether his attorney had discussed with him "the defenses the law of this state recognizes regarding the charge" and he did not at that time raise any concern or ask any questions regarding self-defense. This court cannot conclude that the Michigan Court of Appeals erred – let alone flouted clearly established federal law, which for AEDPA purposes means the holdings of the U.S. Supreme Court only – in crediting Flournoy's plea-colloquy acknowledgement over his later self-serving affidavit on appeal.

Moreover, as the Magistrate correctly explains, *see* R&R at 13-14, while Flournoy may have sincerely believed that he was "in imminent danger of death or great bodily harm and that it [wa]s necessary for him to exercise deadly force", *see People v. Bailey*, 777 N.W.2d 424, 424 (Mich. 2010) (Kelly, C.J., concurring) (quoting *People v. Riddle*, 467 Mich. 116, 119, 649 N.W.2d 30 (Mich. 2002)), he has not shown that his belief was *reasonable*. Even if Flournoy had elected to go to trial and presented a self-defense theory, the state trial court or the jury could have concluded that the reasonableness of his alleged belief in the necessity of deadly force was undermined by the absence of evidence that the victim attacked him or that they were engaged in "voluntary mutual combat," *Riddle*, 649 N.W.2d at 35.

The Magistrate Judge also was right to reject Flournoy's notion that his trial counsel should have known that the Michigan Supreme Court would issue the decision it did in *People v. Riddle*, 467 Mich. 116, 649 N.W.2d 30 (Mich. 2002), which Flournoy contends clearly shows that his shooting of the victim was justified as self-defense because he was in his own home when the victim accosted him. As the Magistrate notes, the Michigan Supreme Court did not issue *Riddle* until July 31, 2002, seven days *after* Flournoy pled guilty on July 24, 2002, *see* R&R at 12. Flournoy's objections respond, irrelevantly, that the Michigan Supreme Court heard oral argument in *Riddle* on April 9, 2002, "three months previous to Petitioner pleading guilty . . . .", Objections ¶ 6.

Flournoy fails to explain how trial counsel could have known, from the mere fact that oral argument had been heard, how the Michigan Supreme Court would rule and how it would reason in its eventual opinion. *Accord Wajda v. US*, 64 F.3d 385, 388 (8th Cir. 1995) ("*Johnson* was decided n 1995 while Wajda's direct appeal was completed in 1993. Counsel could not be expected to make a *Johnson*-type of argument before *Johnson* was decided; counsel's performance was not deficient by failing to predict future developments in the law.") (citations omitted); *US v. Calles*, Nos. 92-10590 & 92-10675 & 92-10699, 15 F.3d 1090, 1993 WL 484723, *2 (9th Cir. Nov. 24, 1993) (per curiam) (Alarcon, Leavy, Kleinfeld) ("Marvin also argues that he received ineffective assistance of counsel because his lawyer did not object to the permissive-inference instruction. The record is adequate for us to review this claim now . . . . We reject it. *Rubio-Villareal* had not yet come down, so Marvin's attorney could not be expected to anticipate it."); *Fergusson v. Blackletter*, 2009 WL 982488, *6 (D. Or. Apr. 8, 2009) ("Petitioner's sentence was within the statutory limits under Oregon law at the time, and counsel could not be expected to anticipate *Blakely*'s interpretation of 'statutory maximum' and its impact on sentencing enhancements."(citing *Lowry v. Lewis*, 21 F.3d

9

344, 346 (9th Cir. 1994)); *US v. Shipp*, 628 F. Supp.2d 1312 (N.D. Okla. 2008) (where circuit precedent held at time of appeal that walk-away escape was a violent felony for purposes of the Armed Career Criminal Act, appellate counsel did not perform deficiently by failing to assert that district court erred by not following contrary rule of another circuit, nor by failing to petition the U.S. Supreme Court for *certiorari* on the issue).

Next, Flournoy complains that the Magistrate Judge did not mention the fact that he and the victim had an "altercation" in Flournoy's driveway, shortly before he shot the victim, in which the victim "came around a car" at him and threatened him. But Flournoy fails to identify any U.S. Supreme Court holdings which the state courts acted contrary to, or unreasonably applied, in refusing to conclude that his recent history with the victim made it reasonable for him to believe in the necessity of deadly force, as required for habeas relief under 28 U.S.C. § 2254(d)(1). Nor has Flournoy shown that the state courts' determination as to the reasonableness of his alleged belief (in the necessity of deadly force) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding", as required for habeas relief under 28 U.S.C. § 2254(d)(2). Significantly, Flournoy has not even *attempted* to gainsay the Magistrate's statement that "testimony presented at the preliminary examination indicated that Petitioner's killing of the victim was the result," not of Flournoy's belief that he had to use deadly force to avert his own imminent death or great bodily harm, but of "premeditation and forethought", R&R at 13.

**CERTIFICATE OF APPEALABILITY**

The U.S. Supreme Court disapproves of blanket denials of certificates of appealability ("COAs"). *Colwell v. McKee*, 2009 WL 125223, *3 (W.D. Mich. Jan. 16, 2009) (Maloney, C.J.) (citing *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001)). Rather, this court must engage in a reasoned assessment of each claim to determine whether a [COA] is warranted. *Murphy*, 263 F.3d at 467.

Under 28 U.S.C. § 2253(c)(2), "'the court should grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.'" *Wardlaw v. Howes*, 575 F. Supp.2d 820, 821 (W.D. Mich. 2008) (quoting *Harbison v. Bell*, 503 F.3d 566, 568 (6th Cir. 2007), *cert. denied*, – U.S. –, 128 S.Ct. 1479 (2008), *rev'd o.g.*, – U.S. –, 129 S.Ct. 1481 (2009)). To satisfy this standard, the petitioner must demonstrate that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues raised are adequate to deserve further review. *Harbison*, 503 F.3d at 569 (citing *Banks v. Dretke*, 540 U.S. 668, 705 (2004)). *See also Butz v. Berghuis*, 2009 WL 33462, *6 (W.D. Mich. Jan. 5, 2009) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

The petitioner need not show, however, that he is likely to succeed on appeal. *See Wardlaw*, 575 F. Supp.2d at 821 (citing *Miller-El*, 537 U.S. at 337); *Workman v. Bell*, 484 F.3d 837, 842 n.3 (6th Cir. 2007) (distinguishing standard for stay pending appeal, which focuses on appellant's likelihood of success on the merits, from the COA standard, which requires a lesser showing), *reh'g & reh'g en banc denied* (6th Cir. May 7, 2007). "'[I]t is consistent with § 2253 that a certificate of appealability will issue in some instances where there is no certainty of ultimate relief.'" *Walker v. Carlton*, 114 F. App'x 687, 690 (6th Cir. 2004) (quoting *Miller-El*, 537 U.S. at 337).

The plaintiff does not meet the standard for a COA, because other reasonable jurists would not disagree with the determinations herein. Nor has he presented any other issues which are

11

"adequate to deserve further review."

## ORDER

Accordingly, having reviewed the habeas petition and supporting brief, the government's response, and the petitioner's reply brief, as well as the R&R and the petitioner's timely objections:

The petitioner's objections **[document # 23] are OVERRULED.**

The Report and Recommendation **[document # 22] is ADOPTED**.

The habeas petition is **DISMISSED**.

This case is **TERMINATED** and **CLOSED**.

The separate judgment required by Fed. R. Civ. P. 58 is being issued contemporaneously.

This is a final order**, but the court declines to issue a certificate of appealability**.[4]

**IT IS SO ORDERED this 6th day of April 2010.**

         /s/ Paul L. Maloney
         Paul L. Maloney
         Chief United States District Judge

---

[4] On its own, this court's refusal to issue a COA does not prevent the losing party from seeking a COA from the U.S. Court of Appeals under Fed. R. App. P. 22. *Williams v. Curtin*, 2009 WL 806934, *5 n.8 (W.D. Mich. Mar. 25, 2009) (Maloney, C.J.) (citing *Wilson v. US*, 287 F. App'x 490, 494 (6th Cir. 2008) ("If the district judge denies a COA, a request may then be made to a court of appeals . . . .") (citing *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997))).